BRENDA REINERT,                    )
                                   )  Civil Action
            Plaintiff             )  No. 09-cv-3097
                                   )
        vs.                        )
                                   )
LSI CORPORATION,                   )
                                   )
            Defendant             )

                        *    *    *


APPEARANCES:

        DONALD P. RUSSO, ESQUIRE
            On behalf of Plaintiff

        SHANNON H. PALIOTTA, ESQUIRE
        ROBERT W. CAMERON, ESQUIRE
            On behalf of Defendant

                        *    *    *


                    O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on Defendant's Motion

for Summary Judgment filed April 16, 2010, together with the

Memorandum of Law in Support of Defendant's Motion for Summary

Judgment and Defendant's Statement of Undisputed Material Facts

in Support of Defendant's Motion for Summary Judgment.

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion

for Summary Judgment was filed May 14, 2010 together with a

Statement of Undisputed Material Facts to Defendant's Motion for

Summary Judgment.  Defendant's Reply Brief in Support of Motion

for Summary Judgment was filed June 2, 2010.

For the following reasons, I grant Defendant's Motion for Summary Judgment in part, I dismiss it in part as moot, and enter judgment in favor of defendants and against plaintiff. Specifically, I conclude that there are no genuine issues of material fact that would preclude summary judgment in defendant's favor on plaintiff's claim pursuant to Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140.  To the extent defendant seeks summary judgment on any claim under Section 502 of ERISA, 29 U.S.C. § 1132, I dismiss the motion as moot because I conclude plaintiff is not pursuing such a claim.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in the City of Allentown, Lehigh County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

Plaintiff Brenda Reinert initiated this action on June 10, 2009 by filing a one-count civil Complaint against her former employer, defendant LSI Corporation, in the Court of Common Pleas of Northampton County, Pennsylvania.  Defendant

removed the matter to this court by Notice of Removal filed July 13, 2009.

The Complaint alleges one claim under Section 510 of ERISA. The claim arises from an October 24, 2007 asset sale by which Infineon Technologies AG ("Infineon") purchased the Mobility Products Group ("MPG") assets from defendant LSI Corporation. The gravamen of plaintiff's claim is that, in conjunction with the sale of MPG to Infineon, LSI wrongfully denied her pension benefits.

## STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 443 (3d Cir. 2003). Only facts that may affect the outcome of a case are "material". Moreover, all reasonable inferences from the record are drawn in favor of the non-movant. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof.  See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).  Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

FACTS

Based upon the pleadings, record papers, exhibits, and the uncontested concise statement of facts contained within defendant's motion for summary judgment and accompanying brief, the pertinent facts for purposes of the motion for summary judgment are as follows.[1]

---

[1]     By my Rule 16 Status Conference Order dated October 16, 2009, any party filing a motion for summary judgment was required to file a brief, together with "a separate short concise statement, in numbered paragraphs, of the material facts about which the moving party contends there is no genuine dispute."  The concise statement of facts was required to be supported by citations to the record and, where practicable, relevant portions of the record were to be attached.

In addition, my Order provided that any party opposing a motion for summary judgment was required to file a brief in opposition to the motion and "a separate short concise statement, responding in numbered paragraphs to the moving party's statement of the material facts about which the opposing party contends there is a genuine dispute, with specific citations to the record, and, where practicable, attach copies of the relevant portions of the record."

(Footnote 1 continued):

-4-

_____

(<u>Continuation of footnote 1</u>):

        Moreover, my Order provided that if the moving party failed to provide a concise statement, the motion may be denied on that basis alone. With regard to the opposing party, my Order provided: "All factual assertions set forth in the moving party's statement shall be deemed admitted unless specifically denied by the opposing party in the manner set forth [by the court]."

        In this case, defendant filed a concise statement of facts in support of its motion. Although plaintiff filed a response in opposition, together with her own statement of undisputed facts, she did not file a responsive concise statement of undisputed facts with citation to the record as required by my Order. Thus, plaintiff has not specifically denied any of the facts set forth in defendant's concise statement as required by my Rule 16 Status Conference Order.

        The requirement for a concise statement and a responsive concise statement is consistent with the requirement of Rule 56 of the Federal Rules of Civil Procedure that the moving party provide proof that there are no genuine issues of material fact which would prevent him from being entitled to judgment as a matter of law. Moreover, in response, the non-moving party (in this case plaintiff) may not rest on her pleadings, but must come forward with competent evidence that demonstrates a genuine issue of material fact. <u>Ridgewood</u>, <u>supra</u>.

        In addition, Rule 83(b) of the Federal Rules of Civil Procedure provides:

>         A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or local district rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

        Thus, even if my requirement for a separate concise statement were not consistent with Rule 56, my October 16, 2009 Rule 16 Status Conference Order gave plaintiff actual notice of my requirement, and plaintiff clearly failed to comply with it. See <u>Kelvin Cryosystems, Inc. v. Lightnin</u>, 2004 U.S.Dist.LEXIS 23298, at *4 (E.D.Pa. Nov. 15, 2004)(Gardner, J.).

        Moreover, plaintiff's counsel, Donald P. Russo, Esquire, has been advised of my policy in prior cases before me. <u>E.g.</u>, <u>Higgins v. Hospital Central Services, Inc.</u>, 2004 U.S.Dist.LEXIS 24907, at *4-5 (E.D.Pa. Dec. 9, 2004) (Gardner, J.), in which factual assertions set forth by defendant were deemed admitted true for plaintiff's failure to respond to defendant's statement of undisputed facts.

        Accordingly, although I do not grant defendant's motion as unopposed, <u>see</u> E.D.Pa.R.Civ.P. 7.1(c), I deem admitted all facts contained in Defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment filed April 16, 2010 for purposes of the within

        (<u>Footnote 1 continued</u>):

*Parties*

Defendant LSI is a publicly traded corporation which is a leading provider of innovative silicon, systems and software technologies. Plaintiff Reinert worked for LSI and its predecessors, Agere Systems Inc., Lucent Technologies, AT&T and Western Electric, from July 11, 1983 until her employment was terminated effective October 24, 2007. Plaintiff's last position with LSI was as a program manager in the MPG. While it was part of LSI, MPG was responsible for the development of microchips that went into cellular telephones and satellite radios.

*Sale of MPG to Infineon*

In 2007, LSI identified MPG as a business unit that was no longer core to LSI's business. On August 20, 2007, LSI publicly announced that it had signed a definitive agreement to sell its MPG business to Infineon. That same date, LSI entered an Asset Purchase Agreement ("Agreement") with Infineon.

Pursuant to the Agreement, LSI and Infineon agreed to transfer all MPG employees to Infineon on the day following the date of the closing of the sale. LSI also agreed that, for a one-year period, it would not solicit the employment of, or hire,

_____

(Continuation of footnote 1):

motion only. However, I also note that a review of plaintiff's Statement of Undisputed Material Facts to Defendant's Motion for Summary Judgment, which statement was filed May 14, 2010 together with plaintiff's response in opposition to defendant's motion, reveals that no genuine issues of material fact exist which would preclude summary judgment in favor of defendant.

-6-

any of the MPG employees transferred to Infineon. LSI further agreed that from August 20, 2007 through the closing date, it would not permit MPG employees to transfer to other positions within LSI. The transfer of all MPG employees to Infineon was a material and crucial component of the transaction because the real value in selling MPG was in the employees.

On August 20, 2007, LSI announced to its employees that MPG would be sold to Infineon and that all MPG employees would be transferred to Infineon at the time of the closing. LSI also informed the MPG employees that they were not permitted to apply for other positions within LSI instead of transferring to Infineon. Plaintiff Reinert became aware, in August 2007, of LSI's intention to sell MPG to Infineon, and she knew that the sale was forecasted to close in October 2007. She also knew that she could not transfer to any other position within LSI in order to remain an LSI employee after the closing date, and she knew that she would stop accruing pension service credit once her employment with LSI was terminated.

The sale closed on October 24, 2007. At that time, there were approximately 600 employees in MPG, including plaintiff. All of those employees, including plaintiff, were terminated from LSI effective October 24, 2007. On October 25, 2007, in accordance with the Agreement, all of the former MPG employees became Infineon employees. Plaintiff admitted at her

-7-

deposition that her employment with LSI was not terminated for any reason other than the sale of the MPG business.

*Agere Systems Inc. Pension Plan*

While employed by LSI, plaintiff was a "Participant" in the Agere Systems Inc. Pension Plan ("Plan"). Under the Plan, "Participant" is defined as

> any Employee who is employed by a Participating Company who meets the eligibility criteria of Section 4.1(a) with respect to the Service Based Formula or the eligibility criteria of Section 4.1(b) with respect to the Account Balance Program, who is accruing or entitled to a pension benefit under either the Service Based Formula or the Account Balance Program.[2]

Pursuant to the terms of the Plan, plaintiff's employment with Western Electric, AT&T, Lucent, Agere, and LSI counted as service for the purpose of calculating her pension under the Plan. Infineon was not a "Participating Company" under the Plan.

The Plan provides that each Participant who terminates employment, has reached the age of 50, and whose term of employment is 15 years or greater shall be eligible to receive an immediate service pension. It also allows Participants who are within one year of the age requirement and/or term-of-employment requirement for pension eligibility to take a Transition Leave of

---

[2] Plan, section 2.42. Relevant portions of the Plan are attached to Exhibit A (Deposition of Brenda L. Reinert dated December 2, 2009 ("Reinert deposition")) and Exhibit C (Affidavit of Paul Bento), both of which are attached to Defendant's Motion for Summary Judgment.

Absence ("TLA") beginning on the day following their separation date pursuant to a sale to a non-Agere entity. The TLA must end within one year after the date of sale, or upon attainment of the minimum age and/or term-of-employment requirements, at which time the Participant would be eligible to receive an immediate service pension.

As of the October 24, 2007 termination of her employment with LSI, plaintiff Reinert was 48 years and 11 months old, and was five days shy of her 49th birthday. She requested that LSI allow her to remain employed by LSI until her 49th birthday on October 29, 2007. There were other MPG employees who were close to reaching their 49th birthdays as of the October 24, 2007 closing date. Those employees, like plaintiff, were transferred to Infineon and stopped accruing pension service credit under the Plan upon the closing date.

LSI treated all MPG employees the same for pension and all other purposes. Plaintiff was not aware of any MPG employee who failed to reach the age of 49 before October 24, 2007 and who was allowed to remain employed with LSI after the closing date in order to qualify for a TLA.

Under the Plan, plaintiff elected to receive a lump sum payment of the present value of her pension at the time her employment with LSI was terminated. By virtue of this election, plaintiff received a gross distribution under the Plan in the

amount of $166,730.04, which she chose to roll over into an individual retirement account.

*Agere Force Management Program*

Pursuant to the Agere Force Management Program ("FMP"), some employees who were placed "at risk" for a reduction in force were provided 60 days, with no work responsibilities, to remain on Agere's payroll. Those 60 days provided an opportunity for those employees to find other employment within Agere. If "at risk" employees were unable to find employment, they would be eligible to receive separation benefits pursuant to the terms of the FMP.

By its express terms, the FMP did not apply to employees whose employment was terminated pursuant to the sale of a business and who were offered employment by the purchasing entity. All MPG employees were offered employment with Infineon pursuant to the Agreement. Plaintiff admitted at her deposition that she was offered employment by Infineon and that, pursuant to the FMP, she was not eligible for FMP benefits.

To the extent plaintiff alleges that there may have been MPG employees who were afforded benefits under FMP, plaintiff does not know the names of any such employees or the circumstances surrounding the alleged termination of those employees. She admitted at her deposition that she has no evidence that those individuals actually received FMP benefits,

and does not know the effect of termination of their employment on their pension status.

*Plaintiff's Employment with Infineon*

Plaintiff was employed by Infineon from October 25, 2007 through August 20, 2008. During that time, she was compensated by, and received benefits solely from, Infineon. When her employment with Infineon was terminated in August 2008, Infineon provided plaintiff with severance benefits. In connection with her request for receipt of unemployment compensation benefits, plaintiff represented to the Allentown UC Service Center that Infineon was her employer from October 25, 2007 through August 20, 2008. She also represented that Infineon set her work hours, pay, and salary, and that after October 24, 2007, she had no employee or contractor relationship with LSI.

As part of her job functions with Infineon, plaintiff continued to perform work for LSI after October 24, 2007. This work exclusively pertained to litigation consulting services for litigation filed against LSI by Sony Ericsson Mobile Communications USA Inc. ("SEMC litigation"). Plaintiff knew, before she began her employment with Infineon, that continuing to assist on the SEMC litigation would be one of her job functions with Infineon.

Plaintiff's assistance on the SEMC litigation was limited to an average of one to three hours per week. Other

former MPG employees also continued to provide assistance to LSI on the SEMC litigation.  No former MPG employee, including plaintiff, was compensated by LSI for her work on the SEMC litigation after becoming employed by Infineon.  Plaintiff also did not receive any benefits from LSI while employed by Infineon.

In October 2008, after the termination of her employment with Infineon, plaintiff signed an independent contractor agreement with LSI regarding the SEMC litigation. Pursuant to that agreement, LSI paid plaintiff $80 per hour for any services performed on the SEMC litigation.  The agreement states that "[y]our services will be as an independent contractor, and nothing herein shall deem to make you an employee of LSI or Sidley Austin LLP."[3]

## CONTENTIONS OF THE PARTIES

### Defense Contentions

Defendant contends that it is entitled to summary judgment for three reasons.  First, it argues that plaintiff's Section 510 claim fails because plaintiff cannot establish that LSI acted with the specific intent to deprive her of protected benefits, and cannot show that LSI offered a pretextual reason for terminating her employment.  Second, defendant contends that plaintiff is not entitled to damages under Section 510.  Third,

---

[3]     Letter from Richard D. Bleicher to Brenda Reinert dated October 15, 2008, which is attached as Exhibit 23 to the Reinert deposition.

defendant avers that plaintiff should not be permitted to pursue a claim under Section 502.

Specifically, regarding its first argument, defendant contends that where, as here, plaintiff has no direct evidence that a Section 510 violation occurred, a burden-shifting analysis applies whereby once plaintiff has established a prima facie showing of a Section 510 violation, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's termination.  If such a reason is articulated, the burden shifts back to plaintiff to show that the reason is pretextual.

Defendant contends that plaintiff cannot make a prima facie showing that her employer committed prohibited conduct for the purpose of interfering with plaintiff's pension benefits, because plaintiff was not treated any differently from the approximately 600 other MPG employees, all of whom were transferred to Infineon.  Defendant avers that plaintiff's lost opportunity to accrue additional pension benefits was merely incidental to LSI's legitimate business decision and was not a motivating factor.

Defendant further contends that even if plaintiff could establish a prima facie case under Section 510, it has articulated a legitimate, non-discriminatory reason for plaintiff's termination: defendant LSI and Infineon agreed to the

transfer of all MPG employees to Infineon pursuant to the Agreement because the real value of MPG was in its employees. Defendant avers that LSI made this decision without any regard for plaintiff's, or any other MPG employee's, pension status.

Defendant asserts that plaintiff cannot establish that LSI's legitimate, non-discriminatory reason for terminating her employment was false or that an intent to interfere with her pension rights was the real reason for her termination. According to defendant, plaintiff conceded at her deposition that she was terminated because she was part of the business group transitioning to Infineon, and not for any other reason.

Defendant contends that plaintiff can establish no evidence that any MPG employee was actually treated better than she was, with respect to the sale of MPG to Infineon, and that no MPG employees were afforded benefits pursuant to the FMP rather than being transferred to Infineon. Thus, defendant contends that plaintiff cannot show that the termination of her employment was pretextual. Moreover, defendant contends that because all of the approximately 600 MPG employees were terminated by LSI and offered employment by Infineon pursuant to the Agreement, they were precluded from receiving benefits under the FMP.

Second, defendant LSI contends that it is entitled to summary judgment because plaintiff's claim for damages is not available under ERISA. Specifically, defendant avers that

Section 510 does not permit an award of pension benefits that plaintiff would have received if she had remained an employee of LSI until her 49th birthday and, therefore, had qualified for a TLA under the plan.  Rather, defendant asserts that a Section 510 violation can be remedied only by an award of equitable relief. Further, defendant avers that plaintiff admitted that, as of the closing date, she did not qualify for a TLA and LSI did not owe her any benefits.

Thus, defendant contends that even if plaintiff could establish that LSI violated Section 510 by terminating her employment, her claim nevertheless would fail because the relief she seeks is not available under the statute.

Finally, regarding its third argument, defendant contends that plaintiff should not be permitted to pursue a claim under Section 502 of ERISA; and even if such a claim were permitted, it would fail on the merits.  Specifically, defendant contends that, although Section 502 permits a participant to seek damages to recover benefits due to her under the Plan, plaintiff cannot prevail on such a claim for three reasons: (1) she failed to plead a Section 502 claim in her Complaint and has not sought to amend the Complaint to add such a claim; (2) she did not exhaust administrative remedies on a Section 502 claim before filing this action; and (3) she was not an LSI employee after

October 24, 2007, and therefore was not entitled to accrue
additional pension service credit after that date.

Contentions of Plaintiff

In response to defendant's contention that Section 510
does not authorize recovery of compensatory damages, plaintiff
characterizes the relief she seeks as equitable, not
compensatory.[4]  She contends that "if Defendant had in fact
properly applied the terms of its own plan, it would have
credited her for the service time [she] had earned.  Moreover, if
service time had to be bridged, the company's policies would have
provided for such."[5]  Further, plaintiff contends that her
"subsequent work on the SEMC litigation and her paychecks
indicate [that] she either had or could have attained the time
necessary to reach the necessary service time to obtain the full
pension."[6]

Second, plaintiff contends that she has established a
prima facie claim for violation of Section 510 through
circumstantial evidence of defendant LSI's specific intent to
interfere with her pension benefits.  Specifically, she avers
that in March 2009, LSI announced that the pension plan was
underfunded by a shortage of $238 million.  She further notes

---

[4]     Plaintiff's brief, page 10.

[5]     Plaintiff's brief, page 9.

[6]     Plaintiff's brief, page 9.

that as of the termination date of her employment, she was only five days from "full vesting" and was a valued employee who continued working for LSI after her termination date. Moreover, she notes that if she had been laid off instead of transferred to Infineon, she would have been entitled to a sixty-day "bridge".[7]

Plaintiff contends there is "clear evidence" that LSI denied her pension benefits. She asserts that because she was in good standing with LSI and she was within one year and five days of her 50th birthday, her early retirement benefit was capable of being reached imminently. Plaintiff contends that "the contract with Infineon states that the seller will have the ability to authorize such a change in termination date. Therefore the Defendant had some discretion in this regard." She further avers that "In the past, Agere managers took steps to bring employees to early retirement eligibility, if they were within weeks or months of achieving their benefit."[8]

Plaintiff further contends that the sale of MPG to Infineon effectively "singles out employees who have good performance that is non-strategic to the company, from employees who are in a faltering business which the company no longer

---

[7]    Plaintiff's brief, pages 18-20.

[8]    Plaintiff's brief, page 22. Although plaintiff presumably is referring to the Agreement as "the contract with Infineon", she does not identify a specific provision. Moreover, neither party has attached a copy of the Agreement to their moving papers. Accordingly, I am unable to evaluate the accuracy of plaintiff's suggestion that the Agreement would permit LSI to delay plaintiff's termination date until after her 49th birthday.

wishes to invest in, and who the company will terminate under the force management plan."[9]

Plaintiff contends that according to her W-2 payroll report at the end of 2008, she received three paychecks from Agere for work performed between December 2007 and December 2008. She suggests that this supports a conclusion that she was an employee of LSI after October 24, 2007. She further asserts that she does not meet any of the "excluded employee categories" under the Plan and that any break in her service which is less than six months in duration is considered a leave of absence under the Plan.

Plaintiff asserts that the purpose of ERISA is to ensure that workers receive promised pension benefits upon retirement. She argues that "Congress surely must not have intended that an employee so close to receiving a benefit that is protected...miss the full early retirement monthly benefit by five days of her birthday."[10] Thus, she contends that LSI should have granted her 60 days on its payroll after the termination of her employment pursuant to the FMP, and she asserts that other employees received such an accommodation under such circumstances.

---

[9]     Plaintiff's brief, page 22.

[10]    Plaintiff's brief, page 26.

Finally, plaintiff contends that her employment with LSI is distinguishable from the facts of <u>Muth v. LSI Corporation</u>, a case involving an MPG coworker, because she maintained a more extensive and lengthy relationship with LSI than the <u>Muth</u> plaintiff. <u>See</u> <u>Muth v. LSI Corporation</u>, 2010 WL 2671454 (E.D.Pa. July 1, 2010)(Sanchez, J.)

<u>DISCUSSION</u>

<u>Section 510</u>

Pursuant to Section 510 of ERISA, it is unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary...for the purpose of interfering with the attainment of any right to which such participant may become entitled to under the plan, this title, or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140.

To prove a Section 510 claim, plaintiff does not have to prove that the only reason she was terminated was an intent to interfere with her pension benefits. However, plaintiff must "demonstrate that the defendant had the 'specific intent' to violate ERISA." <u>Jakimas v. Hoffmann La Roche, Inc.</u>, 485 F.3d 770, 785 (3d Cir. 2007). That is, plaintiff must show that "the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits." <u>Id.</u>

-19-

Proof that plaintiff lost benefits because of termination alone is not sufficient to prove a claim for violation of Section 510.  Moreover, "[p]roof that the termination prevented the employee from accruing additional benefits through more years of service alone is not probative of intent."  Jakimas, 485 F.3d at 785.  "Where this is the only deprivation, a prima facie case requires some additional evidence suggesting that pension interference might have been the motivating factor....[T]he savings to the employer resulting from the [employee's] termination [must be] of sufficient size that they may be realistically viewed as a motivating factor."  Id. (quoting Turner v. Schering-Plough Corporation, 901 F.2d 335, 348 (3d Cir. 1990).

Proof of specific intent may be demonstrated through direct or circumstantial evidence.  However, where there is no direct evidence, courts use a burden-shifting analysis whereby plaintiff must first show her prima facie case by showing (1) the employer committed prohibited conduct (2) that was taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.  Jakimas, 485 F.3d at 785.  If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the prohibited conduct.  Id. at 785-786.

If the employer satisfies its burden of articulating such a reason, then plaintiff must prove, by a preponderance of the evidence, that the reason articulated by the defendant is merely pretextual. Jakimas, 485 F.3d at 786. "The pretext analysis focuses the court's attention on whether the defendant's proffered reason was the real reason for its decision." Id.

Here, plaintiff satisfies the first element of a Section 510 claim because the undisputed facts indicate that defendant LSI discharged her from employment, which is one of the adverse employment actions set forth in Section 510. She also satisfies the third element because she can demonstrate that, had she remained an LSI employee until her 49th birthday, she would have been eligible for a TLA and, effectively, early retirement under the Plan. Thus, plaintiff can establish that the termination of her employment prevented her from attaining pension benefits under the Plan to which she would have been otherwise entitled. See Jakimas, 485 F.3d at 785.

However, plaintiff cannot establish the second element of a Section 510 claim, which requires her to show that defendant acted with the specific intent to interfere with her pension benefits under the Plan. Jakimas, 485 F.3d at 785. The undisputed facts are that plaintiff's employment with LSI was terminated solely because of the sale of MPG to Infineon. At her

deposition, plaintiff admitted she did not contend otherwise.[11]
She also admitted that as of October 24, 2007, she did not
qualify for a TLA because she had not yet reached her 49th
birthday.[12]

Moreover, plaintiff cannot show that LSI treated her
any differently from other employees.  The undisputed facts are
that, regardless of their age, all of the approximately 600 MPG
employees were transferred to Infineon on October 25, 2007, the
day after the sale closed.  Although plaintiff avers that some
MPG employees received benefits under the FMP, which ostensibly
would have permitted her to remain an LSI employee for an
additional 60 days, she has adduced no evidence in support of
this belief.  On the contrary, the undisputed facts reveal that
all MPG employees were transferred to Infineon without exception.
Moreover, plaintiff admitted at her deposition that she had no
direct evidence that LSI had treated any MPG employee differently
than it treated her.[13]  She also admitted that under the terms of

---

[11]     Reinert deposition, page 70.

[12]     Reinert deposition, page 84.

[13]     Reinert deposition, page 95.  I note that in her May 13, 2010
Affidavit ("Reinert Affidavit"), which affidavit is attached as an exhibit to
Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary
Judgment, plaintiff avers the following:

> In 2004, a number of employees were subjected to Agere's
> Force Management Plan.  Accommodations were discussed
> specifically with respect to Dave Fishman.  HR intended to
> choose a termination date which protected his eminent
> eligibility for a Transition Leave of Absence.  On occasion,

(Footnote 13 continued):

the FMP, she was not entitled to any benefit under the FMP because she was offered employment by Infineon.[14]

Accordingly, I conclude that plaintiff cannot establish the second element of a Section 510 claim, that is, that defendant acted with the specific intent to interfere with her pension benefits. <u>Jakimas</u>, 485 F.3d at 785. Therefore, she has not stated a prima facie case under Section 510, and I grant summary judgment in defendant's favor on the basis.

Moreover, I note that even if plaintiff had established a prima facie case, thereby shifting the burden to defendant, defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment. <u>Jakimas</u>, 485 F.3d at 785-786. Specifically, defendant avers that its decision to transfer all MPG employees, including plaintiff, to Infineon was based on the sale Agreement, not based on any effort to interfere

---

(<u>Continuation of footnote 13</u>):

> managers would tailor the business needs to justify keeping the pension until his or her benefit could be attained.

Reinert Affidavit, paragraph 49.

This statement does not create a genuine issue of material fact because it avers only that the employee termination date for an Agere employee, Dave Fishman, was based at least in part on protecting that employee's ability to attain his pension benefit pursuant to the FMP. However, plaintiff avers that the FMP applied to Mr. Fishman's employment termination in 2004. Although her statement is relevant for the proposition that, in other cases, LSI (or its predecessor, Agere) may have offered FMP benefits to employees, she adduces no evidence that any MPG employee was offered such benefits in connection with the 2007 transfer to Infineon. On the contrary, as noted above, the undisputed facts are that all MPG employees were transferred to Infineon without exception.

[14] Reinert deposition, page 98.

with the employees' ability to accrue ERISA benefits.  Moreover,

the undisputed facts in this matter reveal that the transfer of

all MPG employees to Infineon was a material and crucial

component of the transaction because the real value in selling

MPG was in the employees.[15]

Plaintiff has not established that LSI's articulated

reason for terminating her employment was a pretext for

interfering with her ERISA rights.  <u>Jakimas</u>, 485 F.3d at 786.

On the contrary, as noted above, she admitted at her deposition

that the sale of MPG to Infineon was the only reason that her

employment with LSI was terminated.  Although plaintiff suggests

that LSI's decision to sell MPG may have been motivated by an

attempt to save money, she adduces no evidence in support of this

contention other than an averment in her Affidavit that a

March 31, 2007 Notice stated that LSI and/or Agere had

underfunded the Plan.[16]

---

[15]    I note that this court has previously concluded that LSI's
proffered reason for terminating the employment of all MPG employees
(<u>i.e.</u>, the transfer to Infineon pursuant to the Agreement) is legitimate
and nondiscriminatory.  <u>Muth v. LSI Corporation</u>, 2010 WL 2671454, at *3
(E.D.Pa. July 1, 2010)(Sanchez, J.).

Specifically, Judge Sanchez concluded that plaintiff Muth could
not state a claim for a Section 510 violation because he had adduced no
evidence to support the second element, <u>i.e.</u>, specific intent, but that even
if a prima facie case had been made, defendant had articulated a legitimate
and nondiscriminatory reason for terminating plaintiff Muth's employment and
transferring him to Infineon.  Judge Sanchez further concluded that plaintiff
Muth had failed to show that LSI's proffered reason was a pretext for
interfering with his ERISA rights.

[16]    Reinert Affidavit, paragraph 47.  Although paragraph 47 refers to
an "Exhibit 23", no such exhibit is attached to the Reinert Affidavit or any
other docket paper in this matter.  The March 31, 2007 Notice, therefore, is
not before this court.

Plaintiff cannot avert summary judgment with speculation or by resting on the allegations in her pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor.  <u>Ridgewood</u>, 172 F.3d at 252; <u>Woods</u>, 889 F.Supp. at 184.  Plaintiff's unsupported suggestion that LSI may have sold MPG because the pension Plan had been underfunded is speculative and does not constitute competent evidence from which a jury could conclude that LSI's proffered reason for the termination of her employment was pretextual.[17]

Therefore, I conclude that even if plaintiff could establish a prima facie case of a Section 510 violation, she has not shown that defendant's legitimate, nondiscriminatory reason for terminating her employment was pretextual.  Accordingly, I grant defendant's motion for summary judgment on plaintiff's Section 510 claim, and enter judgment in favor of defendant and against plaintiff on that claim.

<u>Section 502</u>

According to defendant, plaintiff's allegation that she is entitled to additional pension service credit under the Plan effectively amounts to a claim under Section 502 of ERISA,

---

[17]    Moreover, to the extent plaintiff's Affidavit conflicts with her deposition testimony that her employment was terminated solely because of the sale of MPG to Infineon, this does not create a genuine issue of material fact which would preclude summary judgment in defendant's favor.  Plaintiff cannot effectively oppose a motion for summary judgment by contradicting her own deposition testimony without explanation.  <u>See</u> <u>Gulley v. Haymaker</u>, 2009 WL 763549, at *6 n.3 (W.D.Pa. March 23, 2009)(Gibson, J.)(citing, <u>inter alia</u>, <u>Hackman v. Valley Fair</u>, 932 F.2d 239, 241 (3d Cir. 1991)).

29 U.S.C. § 1132.  Defendant contends that plaintiff should not

be permitted to pursue such a claim because she has not sought

leave to amend her Complaint to add such a claim.  However,

defendant asserts that even if plaintiff were permitted to pursue

a Section 502 claim, defendant would be entitled to summary

judgment on that claim as well because plaintiff failed to

exhaust mandatory administrative remedies regarding that claim

and because plaintiff was not entitled to accrue additional

pension service credit after October 24, 2007 because she was no

longer an LSI employee after that date.

Plaintiff's response in opposition to defendant's

motion for summary judgment does not indicate that plaintiff

wishes to pursue a claim under Section 502.  Rather, it is

apparent from a review of plaintiff's brief that she is pursuing

only her Section 510 claim.[18]  Moreover, plaintiff has not sought

to amend her Complaint to add a Section 502 claim pursuant to

Rule 15 of the Federal Rules of Civil Procedure.[19]  Therefore,

---

[18]    Although plaintiff addresses defendant's reliance on Eichorn v.
AT&T Corporation, 484 F.3d 644 (3d Cir. 2007) for the proposition that
plaintiff may not recover damages under Section 510, plaintiff does not appear
to pursue a claim under Section 502, which permits a Plan participant to seek
damages "to recover benefits due to [her] under the terms of [her] plan".
29 U.S.C. § 1132(a)(1)(B).

[19]    Rule 15(a) provides that plaintiff may amend her Complaint once as
a matter of course within 21 days after serving it.  Otherwise, she may amend
only with the opposing party's written consent or the court's leave.
According to the Notice of Removal filed July 13, 2009 by defendant, defendant
was served with the Complaint on June 23, 2009.  Accordingly, plaintiff had 21
days from June 23, 2009, or until July 14, 2009, to amend her Complaint
without defendant's consent or leave of court.  Fed.R.Civ.P. 15(a)(1).  As of
the date of this Opinion, she has not sought to amend her Complaint to add a
Section 502 claim.  Moreover, her brief in opposition to defendant's motion
does not indicate that she wishes to pursue such a claim.

because I conclude that plaintiff is not pursuing a Section 502 claim, I dismiss as moot defendant's motion to the extent it seeks summary judgment on a Section 502 claim, and I do not address the merits of any such claim.

CONCLUSION

For all the foregoing reasons, I grant Defendant's Motion for Summary Judgment on plaintiff's Section 510 claim, I dismiss as moot the motion to the extent it seeks summary judgment on a Section 502 claim, and I enter judgment in favor of defendant and against plaintiff.